Judge Marshall
delivered the Opinion of the Court.
In September, 1822, Love filed his bill in the Franklin Circuit Court, praying to enjoin two judgments rendered by that court against him, of which one was in the name of Brooks, and the other for his use, and which were obtained on the records of two similar judgments rendered in Virginia.
An injunction was granted; the bill was answered, and at the January term, 1824, a decree rendered, dissolving the injunction with damages, and dismissing the hill with costs.
At the succeeding March term, the complainant filed an additional bill, of which the former was by reference made a part, and the court, on his motion, reinstated the injunction, and restored the suit to the docket. The defendant again answered; and in 1833, a second decree was rendered, perpetuating the injunction against the two judgments, but without prejudice to any proceeding upon the original causes of action.
This writ of error is prosecuted to reverse the last decree.
The first error assigned, questions the propriety of reinstating the injunction, restoring the suit to the docket, and permitting a second bill to be filed at a term succeeding that at which the decree on the first bill was rendered.
It is well settled, as a general rule, that the Chancellor (except in cases specially provided for by statute,) cannot open, or alter, or reverse, a final decree, after the expiration of the term at which it was rendered, unless *8 U?°n ^ rev*ew’ or kiH m the nature of a review, or kill, or petition, impeaching the decree for fraud. Bobb vs. Bobb, 2 Mar. 241; Garner's Admr. vs. Strode, 5 Litt. 315.
The feet that a wasn¿[!Li'when the judgment in rendered!canafford no ground risdfctíoiíwlíffla in6 fato W&d might have been pleaded by, the howeverit might hnow iumltfter the judgment.
The bill upon which this suit was reinstated, does not, upon the most liberal construction, assume any of these characters. It alleges neither error, fraud, nor mistake; it sets up no new fact arising after the rendition of the decree; it does not allege any matters substantially different from those relied on in the first bill; and the proof to which it refers (principally argumentative and inferential) appears to have been in the power of the complainant before the decree. And, even if surprise were a ground upon which the decree might have been opened for re-hearing, the allegation that the cause was tried and the decree rendered at a special term, of which the complainant had no knowledge, and that he was therefore, not present to aid his counsel with explanations &c. would not have availed him, since he neither shows that his cause was not ready for hearing, nor that his presence or explanations could or ought to have changed the result.
But it is argued, that the second bill may be consider-e(l as a new suit, and the proceedings and decree in this supposed new suit, are defended on the ground, that Brooks was dead before the judgments enjoined were rendered, and before the suits were commenced; that he had lived and died a non-resident; that his representar ráyes were non-residents, and that there was no means at law of vacating or getting rid of these judgments in the name 0f a ¿ead man. Whatever ground the complainant might have had for resorting to equity, it he had been ignorant the death of Brooks until after the judgment, it is clear that this fact, if known in time to have been pleaded at law, should have been so pleaded, and does not of itself furnish any ground of equitable jurisdiction. But the complainant^ in his first bill, states, that during the pendency of the actions at law, he had heard and believed that Brooks was dead, and thus precludes himself from any claim to the interposition of the chancellor on that ground. If, then, it were admitted, *9 that the second bill was the commencement of a new suit — an admission which is not consistent with the record — it would seem to be impossible to find a sufficient basis for that suit, and the decree in which it terminated, in a fact known before the judgments were rendered— certainly known before the first decree was pronounced, and which being properly pleadable at law, could only become a matter of equity by reason of the party’s inability!', from ignorance or other cause, to plead it at law. In this aspect of the case, the second decree would be considered erroneous.
Where a bill is filed for the purpose of procuring a change in a former decree; the proceedings made part of the new bill, the injunction reinstated, the cause ordered to be re-doclceted — it must be considered as an attempt to re-open the former decree; not a new suit.
But the Court cannot regard the second bill as the commencement of a new suit. The original injunction was reinstated; the original suit was restored to the docket, and all the proceedings appear to be in' continuation of the original suit, and, in effect, a re-opening of the original decree.
It is the opinion of this court, that there was nothing in this case to authorize the proceedings which were had in the suit after the term at which the first decree was rendered, and that they are erroneous.
As the decree must be reversed for these errors, it is only necessary to say, with regard to the general merits of the complainant’s bill, that so far as the court understands them, there is nothing alleged in relation to the original transactions on which the judgments were founded, that should not, and might not, for all that appears, have been relied on at law; and that the decree of January, 1824, dissolving the injunction and dismissing the bill, was proper.
The decree of 1833 is reversed, and the cause is remanded, with directions to dismiss the second bill.